RECEIVED
IN ALEXANDRIA, LA.

MAY 2 4 2010

TONY R. MOORE CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

LARRY LEE STANLEY (#123259)       CIVIL ACTION NO. 1:09-cv-1813
                                  Sec.P
VERSUS
                                  JUDGE DEE D. DRELL

WINN CORRECTIONAL CENTER, ET AL.   MAGISTRATE JUDGE JAMES D. KIRK

---

**IMPORTANT NOTICE**: COURTESY COPIES OF DOCUMENTS YOU FILE
SHOULD **NOT** BE PROVIDED TO ANY JUDGE.
ALL COMMUNICATIONS WITH THE COURT SHALL **ONLY** BE
THROUGH DOCUMENTS FILED WITH THE CLERK OF COURT.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATION

On October 15, 2009, *pro se* Plaintiff Larry Lee Stanley filed

this complaint pursuant to 42 U.S.C. §1983. Plaintiff is an inmate

in the custody of the Louisiana Department of Public Safety and

Corrections. He is incarcerated at the Winn Corrections Center

(WNC), Winnfield, Louisiana. Plaintiff has, in this suit, and in

others,[1] asserted that the defendants[2] have stolen or embezzled

---

[1] See <u>Stanley v. Unknown Prison Officials</u>, No. 1:09-cv-0952. Plaintiff
sued Unknown Prison Officials and the WNC Medical Department alleging that he
was improperly charged for medical and canteen transactions. This suit was
dismissed without prejudice based on plaintiff's voluntary motion to dismiss.
[Docs. # 29 and 30] See also <u>Stanley v. Winn Correctional Center</u>, No. 1:09-cv-
1179. Plaintiff complained of medical malpractice and embezzlement from his
prison account. This suit was dismissed without prejudice based on plaintiff's
voluntary motion to dismiss. [Docs. #22 and 23] In both instances the
undersigned recommended dismissal under the <u>Parratt/Hudson Doctrine</u>, "a random
and unauthorized intentional deprivation of property does not give rise to a
violation of the Due Process Clause if the state provides an adequate post-
deprivation remedy." <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>Hudson v. Palmer</u>,
468 U.S. 517 (1983).

[2] In his original complaint plaintiff identified the following
defendants: Warden Timothy Wilkinson and staff – medical, mental health, mail
room, inmate banking records department. [Doc. #1, ¶III]

In his first amended complaint he named Wilkinson, the administration and

money from his inmate account.

On February 1, 2010 the undersigned recommended that plaintiff's complaint be dismissed with prejudice as frivolous because the complaint did not allege the deprivation of a constitutional right; because plaintiff sued WNC which is not a juridical person capable of being sued;  and, because he sued Warden Wilkinson, who, under §1983 cannot be held vicariously liable for the acts or omissions of his subordinates. [Doc. #28]

Plaintiff did not object, nevertheless, the Court, on February 25, 2010 declined to adopt the Report and Recommendation and instead remanded "... with instructions to require disclosure of Plaintiff's entire prison account to the Court, either in an *ex parte* manner, if appropriate, or by effecting service and allowing

---

department heads, medical, mental health, mail room records, inmate banking. [Doc. #2, ¶III]

In a letter received on December 4, 2009 plaintiff requested an investigation of "computer analyst and inmate banking staff at La. State Penitentiary..." [Doc. #8]

In a letter received and filed on December 18, 2009 he proposed to add the "inmate banking staffs" at River Bend Detention Center, East Carroll Detention Center, Caldwell Detention Center, Forcht Wade Corrections Center and the East Baton Rouge Parish Prison as defendants. [Doc. #13]

In correspondence received on December 21, 2009 plaintiff identified Mrs. Sarah McCoy (inmate banking) and Mary Harris (records) as the only defendants he wished to pursue and he requested that his complaints against the mail room and others be dismissed. [Doc. #16]

In a letter received on December 28, 2009 plaintiff confirmed his desire to drop his complaint against the medical department. [Doc. #17]

In a second Amended Complaint filed on January 14, 2010, plaintiff named Warden Wilkinson, and Inmate Banking, Classification, and Canteen as defendants. [Doc. #27, ¶III]

On February 10, 2010 plaintiff formally dropped all complaints against the WNC Medical Department. [Doc. #29]

Plaintiff to amend his suit, if necessary, to clarify with factual detail the financial losses of which he is complaining." [Doc. #30]

In an effort to narrow the issues and get a clearer picture of plaintiff's complaint, the undersigned issued an order directing plaintiff to amend. In that order, the undersigned observed, "A review of Plaintiff's twenty-four motions and letters to the Court reveals that he intends to pursue his claim against only WNC banking employee Sarah McCoy and WNC records employee Mary Harris. Plaintiff disputes charges made at the Commissary to his prison account." Thereafter, in anticipation of implementing the Court's order, the plaintiff was directed to amend his complaint to "... state exactly what he believes each defendant did to violate his constitutional rights..."; to "... state whether he intends to pursue his claims against McCoy and Harris..."; and, with regard to the "... receipts, charges, and inmate account statements..." plaintiff was directed to identify "each particular charge he disputes; exactly what documents were not produced that he wanted produced; and what he believes these additional documents will prove." [Doc. #31]

Thereafter, plaintiff filed nine (9) letters in response to the Memorandum Order.

On March 5, 2010 plaintiff requested that his complaint against Mrs. McCoy and Mrs. Harris be dismissed and that "... legal proceedings be continued against Mr. Wilkinson because he is the

3

present head of this administration." [Doc. #32]

On March 10, 2010 plaintiff confirmed that the only remaining defendant is Warden Wilkinson, however, he then added,

> <u>Warden Wilkinson may or may not have had any knowledge of what's really going on in his current administration since Sarah McCoy is both head of Inmate Banking and Head of Canteen Operations Dept..</u> She could have had more knowledge of the money scam I first write to you about because after meeting with Mr. Wilkinson way back in May 09 the opening of my legal process Mrs. McCoy just returned the arguments to Mr. Wilkinson saying that I was on debt hold. But if all legal documents from both LSP and Winn Correctional be turned over to your office it could in fact validate my claim about <u>unknown prison officials actually being the orchestrators of this crime</u>. So please I ask investigate this... so that an innocent man will not have to have criminal charges lodged against him only the few perpetrators involved... [Doc. #33]

On March 22, 2010 <u>plaintiff suggested that he was interviewed by a prison official named "Miss Smith" who identified herself as a classification officer, but in fact she was a mental health counselor</u>. Plaintiff again urged review of his master prison records "... from the main LSP computer system" which "may help prove a cover up involving my allegations that monies were possibly embezzled or fraudulently or illegally taken from my account which only bears the name Larry Stanley #123259 instead of Larry Lee Stanley #123259." <u>Plaintiff concluded by stating that "this woman ... may be the chief defendant</u>." [Doc. #34]

On March 23, 2010 plaintiff submitted a receipt from the WNC Canteen "... which came directly from the main computer at the LSP terminal." <u>He then requested that this receipt be investigated and</u>

4

that all inmate banking records from the various other institutions where he has been incarcerated be subpoenaed. He concluded by stating, "In fact your Honor the Inmate Banking Staff here at Winn may be in fact not at fault because I think but am not sure that all accounts are electronically transmitted through the LSP computer terminal. So in continuance of my legal arguments research might have to be made concerning this matter. I will write to the Inmate Banking here at Winn to substantiate or nullify my claim. I will get back to you in writing when the information is obtained... because if this is true then all monies stolen or illegally removed from my account would in fact have been done by inmate banking computer officers at LSP..." [Doc. #35]

On March 24, 2010 he submitted a receipt and again alleged that the "Main Data Base Computer at LSP Canteen or Inmate Banking ... overcharged me again..." He claimed that he received $2.43 worth of merchandise but his account was charged $12.42. He again asserted that the WNC "may not be at fault but the main computer operator at LSP." He then requested to "... file a formal civil suit against canteen operators at LSP seeking the awards of all monies stolen since my incarceration in 1988 which started at Hunt Corrections Center because it was my own common knowledge that $44.00 was illegally removed from my account while at Hunt Correctional for which I never received any form of restitution." He then requested that subpoenas issue to various prisons directing

5

them to "provide the necessary documents to further validate this claim." [Doc. #36]

On April 13, 2010 plaintiff stated, "Although due to the fact that records have not been turned over to me from all other institutions that I have been incarcerated in since 1988 I can only substantiate my claim against Winn Corrections Canteen. I have been given oral information from a source which can only be substantiated by me as a voice from Heaven that the total amount stolen is 183000 by what is reputed by the same voice as 18 different prison officials whose names I cannot provide because they won't turn over the Inmate Banking Mail Room and Canteen records to prove my claim..." He then wrote, "It was also orally reported by the same voice which I refer to as Little B that 19 different officers at the other institutions also stole 183000..." [Doc. #37]

On the same date, plaintiff requested information on the LDOC's policy of maintaining a "Reserved Spending Balance" claiming this was yet another means of embezzlement. [Doc. #38]

Also on the same date, April 13, 2010, plaintiff accused "Miss Green" and another woman (whose name is illegible) at the WNC Canteen of being "co-conspirators in the attempt to steal my monies." [Doc. #39]

In a fourth letter received that same date plaintiff wrote, "Even though I started writing to you a filing legal litigation

6

against Winn Correctional especially the records, inmate banking and mail room depts. <u>now Your Honor, I really do have reasons to believe that it's not the Dept. Head at fault, but someone else such as Clerks or it could be case managers, councillors, or any for that matter within the administration structure here at Winn Correctional trying desperately to embezzle my monies from me...</u>"[Doc. #40]

**Law and Analysis**

**1. Screening**

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). <u>Ali v. Higgs</u>, 892 F.2d 438, 440 (5th Cir.1990).

With regard to prisoner suits filed *in forma pauperis*, <u>the law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. <u>Neiztke v.</u></u>

7

<u>Williams</u>, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if the facts alleged are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). <u>Hicks v. Garner</u>, 69 F.3d 22, 25 (5th Cir.1995); <u>Booker v. Koonce</u>, 2 F.3d 114, 115 (5th Cir.1993); <u>Denton v. Herndandez</u>, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

## 2. *The Factual Basis of Plaintiff's Complaint*

As noted above, in anticipation of issuing an order directing WNC to produce plaintiff's inmate account records, the undersigned, in an attempt to clarify and establish the precise parameters of plaintiff's claims, directed him to amend his complaint.

Between March 5, 2010 and April 13 2010 plaintiff submitted nine responses. As in the pleadings filed prior to the date of the amend order, plaintiff, in these later responses, was unable to definitively assert fault on the part of any specific individual defendants.[3] Further, plaintiff expanded the scope of his request

---

[3] After all these months, it is still unclear who remains as a defendant. Plaintiff has, a various times, named the following defendants: (1) Warden Wilkinson and the medical, mental health, mail room, and inmate banking department. [Doc. #1] (2) Wilkinson, the WNC administration and department heads, medical, mental health, mail room, records, and inmate banking [Doc. #2] (3) those defendants as well as inmate banking staffs at 5 other prisons or jails [Doc. #13] (4) Sarah McCoy and Mary Harris [Doc. #16]

8

to include inmate account records dating from 1988 (the year he entered into LDOC custody) at all of the various institutions where he was incarcerated. Finally, and most importantly, he asserted that the source of his suspicions concerning the alleged embezzlement of funds from his prisoner account was a voice from Heaven he identified as "Little B"! It is clear from the foregoing that plaintiff's claims concerning the embezzlement of funds from his prison accounts are fanciful and delusional. None of the receipts and accounts statements submitted with this claim substantiate or even suggest nefarious activity on the part of any employees of WNC or the Louisiana Department of Corrections.

## 3. Constitutional Violation

Further, as noted in the Reports generated in his previous lawsuits, plaintiff ultimately complains of the random,

---

(5) Warden Wilkinson, Inmate Banking, classification and Canteen [Doc. #27]
(6) Plaintiff dismissed all claims against the medical department [Doc. #29]
(7) Plaintiff dismissed McCoy and Harris and resumed claims against Warden Wilkinson [Doc. #32] (8) Confirmed that claims remained viable as to Warden Wilkinson but alleged he "may or may not have had any knowledge" of the wrong doing and suggested that McCoy or "unknown prison officials" might be culpable. [Doc. #33] (9) Plaintiff suggested that mental health counselor, Miss Smith might be the culprit. [Doc. #34] (10) Plaintiff then suggested that the WNC Banking Staff might not be at fault and that fault might lie with inmate banking computer officers at LSP [Doc. #35] (11) He made a similar assertion in another letter. [Doc. #36] (12) Eighteen different prison officials at WNC and nineteen different official elsewhere, all revealed to him by a "voice from Heaven" named "Little B." [Doc. #37] (13) Then plaintiff named Miss Green and another woman at the WNC Canteen as the culprits. [Doc. #39] (14) Finally plaintiff exonerated the department heads and faulted Clerks, Case Managers, Counselors or Administrators at WNC. [Doc. #40]

unauthorized and intentional theft of funds from his inmate accounts. He implies that the defendants (whoever they may be) deprived him of property without due process in violation of the Fourteenth Amendment to the Constitution.

Prisoners' property and due process rights are circumscribed by virtue of their custodial status. Thus, a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a due process violation so long as the State provides an adequate post-deprivation remedy. Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir.1995) (citing Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)(No due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); accord Wilson v. Holt, 158 Fed. Appx. 546, 2005 WL 3420898, at *1 (5th Cir.2005).

Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Compare   Hutchinson v. Prudhomme, 79 Fed. Appx. 54, 2003 WL 22426661, at *1 (5th

10

Cir.2003); <u>Copsey v. Swearingen</u>, 36 F.3d 1336, 1342-43 (5th Cir.1994); <u>Marshall v. Norwood</u>, 741 F.2d 761, 764 (5th Cir.1984).

Therefore, the deprivation of funds as alleged by the plaintiff, whether negligent or intentional is not actionable in this civil rights complaint because Louisiana law provides plaintiff with his remedy. See, e.g., <u>Hutchinson</u>, 2003 WL 22426661, at *1 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy). Plaintiff may not prevail in this instance even if could establish that the property deprivation violated some prison regulation or policy. See <u>Myers v. Klevenhagen</u>, 97 F.3d 91 (5th Cir.1996)(no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); <u>Murphy v. Collins</u>, 26 F.3d 541 (5th Cir.1994) (inmate's §1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies were available); <u>Stewart v. Herrington</u>, No. 5:06cv177-MTP, 2008 WL 3822597, at *3-4 (S.D.Miss. Aug.12, 2008) (inmate's allegation that prison nurse

11

charged him twice, although he saw the doctor only once, resulting in an overcharge, was dismissed because state law provided adequate post-deprivation remedy).

Simply stated, no cause of action lies under Section 1983 since Louisiana law provides an adequate post-deprivation remedy. Because plaintiff cannot establish a violation of the Constitution or laws of the United States, his complaint is legally frivolous and must be dismissed.

### Conclusion and Recommendation

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by**

12

Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Alexandria, Louisiana *May 24th*, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

13